Filed 2/20/24  P. v. Garris CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID ALLEN GARRIS,<br><br>    Defendant and Appellant. | H050410<br>(Santa Clara County<br>Super. Ct. No. C1502269) |

## I.  INTRODUCTION

A jury convicted defendant David Allen Garris of carjacking (Pen. Code, § 215; count 1),[1] attempted second degree robbery (§§ 664, 211, 212.5, subd. (c); count 2), and assault with a deadly weapon (§ 245, subd. (a)(1); count 3), and found true the allegation that defendant personally used a dangerous or deadly weapon during the commission of the assault (§§ 667, 1192.7).  Defendant admitted allegations that he had sustained two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)).  The trial court denied defendant's motion to strike the prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and sentenced defendant to an aggregate term of 37 years to life.

---

[1] All further statutory references are to the Penal Code.

In 2021, this court conditionally reversed the judgment and remanded the matter for the trial court to conduct a mental health diversion eligibility hearing and to determine whether to exercise its discretion to strike defendant's prior serious felony convictions for sentencing purposes, additionally allowing defendant to renew his *Romero* motion at the resentencing hearing. (*People v. Garris* (Apr. 21, 2021, H045657) [nonpub. opn.].)

Upon remand, the trial court declined to grant defendant mental health diversion, finding he presented "a risk to public safety." Defendant then renewed his *Romero* motion, asking the trial court to exercise its discretion under section 1385 to dismiss the allegations of defendant's prior felony strike convictions. The trial court denied this motion, similarly concluding that defendant represented a "continuing risk to our community."

Defendant now contends: (1) he received ineffective assistance of counsel at resentencing because his counsel did not ask the trial court to strike his two five-year enhancements for prior serious felony convictions; (2) he received ineffective assistance of counsel at resentencing because his counsel did not ask the trial court to stay his sentence for the carjacking count in favor of a shorter sentence on one of the remaining counts; and (3) the trial court abused its discretion when it denied his *Romero* motion.

For reasons that we will explain, we will affirm the judgment.

## II. BACKGROUND[2]

### A. *Prosecution Case*

On January 17, 2015 at approximately 5:00 p.m., J.V. was visiting a friend outside of the friend's motorhome in a homeless encampment in San Jose. At some point, J.V. heard screaming coming from inside a trailer approximately 20 to 25 feet away. Five or

---

[2] The first three sections of this background are taken verbatim from this court's opinion in defendant's initial appeal. We grant defendant's request to take judicial notice of this opinion. Both parties' briefs utilize the background summary from this court's prior opinion as an accurate representation of developments at trial.

10 minutes later, defendant came out of the trailer. Defendant walked directly toward J.V., who was seated. Defendant screamed at J.V., asking him where he was from and demanding that he give defendant money. J.V. had never seen defendant before.

Defendant picked up a shovel, walked up to J.V., leaned over, and put his forehead against J.V.'s forehead. Defendant raised the shovel in a threatening manner, as if he was going to hit J.V. with it. The force from defendant's forehead caused J.V. to fall off his chair. Defendant dropped the shovel and tried to take J.V.'s wallet by pulling it from J.V.'s pants while J.V. was on the ground. J.V. took his wallet out and gave defendant $50 because he was afraid. When J.V. handed defendant the money, defendant reached into J.V.'s pocket, grabbed J.V.'s keys, and left in J.V.'s pickup truck.

J.V. frantically flagged down a police officer and pointed to his truck as defendant drove away down Monterey Road. Traveling at approximately 100 miles per hour in moderate traffic, defendant sped past another officer, attempted to make a righthand turn at a high rate of speed, and crashed into an embankment, where he was apprehended.

**B. *Defense Case***

Defendant testified that he had been on medication since he was 10 years old when he was diagnosed with hyperactive attention deficit disorder. Defendant also started using alcohol, marijuana, and methamphetamine when he was "really young." Defendant began receiving mental health treatment at the California Youth Authority (CYA) around the year 2000. After he turned 18, defendant was put on an antipsychotic medication for hallucinations, but he had difficulty getting the medication once he was released from CYA. Defendant stated that he has been diagnosed with paranoid schizophrenia, bipolar disorder, hyperactive disorder, adjustment disorder, and posttraumatic stress disorder. Defendant was receiving medication in county jail.

Defendant testified that on January 17, 2015, he was living with his mother on Monterey Road. A man named "Carlos" had a trailer across from his mother. Defendant had used methamphetamine the night before when he was "partying with [J.V.] and

3

Carlos." Defendant had become acquainted with J.V., whom he knew as " 'Chewy,' " on a couple of occasions when defendant helped J.V. get drugs.

Defendant testified that on the night before the incident, defendant asked to borrow J.V.'s truck to look for his girlfriend. Defendant offered to pay J.V. with an eight-ball of methamphetamine, which was worth approximately $80. Defendant gave J.V. $30 worth of methamphetamine and said he would give him the remainder when he returned.

Defendant stated that he spent all night looking for his girlfriend. When he returned to the encampment around 3:00 a.m., J.V. was no longer there and neither was Carlos. Defendant went to his mother's trailer to go to sleep.

When defendant's mother woke defendant up, defendant began arguing with her about his girlfriend because defendant felt that his mother was hiding something from him. Defendant heard a couple of people laughing outside. Defendant looked out the window and saw that it was J.V. and another man he had never seen before. Defendant felt like "something's not adding up . . . like everything's a lie." Defendant thought that his girlfriend might be in Carlos's trailer and may have been there "the whole time."

Defendant stated that he went outside, approached the man he did not know, and asked, " 'Who the F are you?' " The man responded, " 'Mind your own business, or I'll mess you up.' " The man had his hand in his coat, causing defendant to think he may have a gun. Defendant tried to open the door to Carlos's trailer, told the man he did not want " 'no problem with [him],' " and said he " 'just want[ed] the keys [to the trailer].' " Defendant knocked on the door to Carlos's trailer saying, " 'Open the door.' " Defendant was angry.

J.V. asked defendant about the $50 defendant owed him for using his truck. When defendant turned to look at J.V., he saw that J.V. had a knife in his hand. Defendant "freaked out" because he did not want to get stabbed. Defendant began backing up and said, " '[D]on't hurt me.' " Defendant took J.V.'s car keys out of his own pocket and told

4

J.V. to either take his keys back or let him use the truck so that defendant could get him the money. Defendant then threw J.V.'s keys towards him. Defendant tripped over a cement block and fell next to a shovel. Defendant got up and swung the shovel at J.V. once or twice. Defendant was scared for his life. J.V. fell over. Defendant picked up J.V.'s keys, got in the truck, and took off.

As defendant drove away, he saw an officer on the side of the road. Defendant honked and pulled alongside the officer because he was trying to get help. Defendant saw that J.V. was already talking to the officer on the other side of the patrol car. Defendant sped away. Defendant drove for a couple of minutes before crashing.

Defendant admitted that he was convicted of assault with a deadly weapon in June 2000, and he was convicted of attempted robbery in October 2007. Defendant also stated that he had been convicted of felony resisting arrest.[3]

Neuropsychologist Brent Hughey testified that when he evaluated defendant in 2012, he diagnosed him with bipolar disorder with psychotic features and multiple substance use disorder. When Dr. Hughey evaluated defendant in 2016, he again concluded that defendant had bipolar disorder but also "raise[d] the prospect of a schizoaffective disorder."

Forensic and clinical neuropsychologist Ashley Cohen diagnosed defendant with post-traumatic stress disorder with disassociation, mixed polysubstance use disorder, and mild neurocognitive impairment.[4] Dr. Cohen also opined that it was possible that defendant had schizophrenia but she "lean[ed] more not . . . than yes."

**C.** *Charges, Verdicts, and Sentencing*

Defendant was charged by second amended information with carjacking (§ 215; count 1), attempted second degree robbery (§§ 664, 211, 212.5, subd. (c); count 2), and

---

[3] Defendant's brother also testified. We do not summarize his testimony here because it is not relevant to the issues on appeal.

[4] Dr. Cohen did not state when she evaluated defendant.

assault with a deadly weapon (§ 245, subd. (a)(1); count 3). It was also alleged that defendant personally used a deadly or dangerous weapon during the commission of count 3 (§§ 667, 1192.7) and had sustained two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)).

The jury found defendant guilty of all counts and found the deadly or dangerous weapon allegation true. Defendant admitted the prior conviction and prior prison term allegations.

The trial court denied defendant's *Romero* motion to strike his prior strike convictions. The court sentenced defendant to 27 years to life on count 1 and imposed and stayed 25 years to life sentences on counts 2 and 3. The court imposed a consecutive 10-year sentence for defendant's prior serious felony convictions and struck the punishment for the prior prison term sentence enhancements.

**D.** *Initial Appeal*

Defendant appealed following the judgment of conviction, contending: (1) his case must be conditionally remanded for a mental health diversion eligibility hearing pursuant to section 1001.36; (2) remand was required to give the trial court an opportunity to exercise its newfound discretion to strike his serious felony priors; and (3) the trial court abused its discretion when it denied his *Romero* motion and violated the constitutional prohibition against cruel and unusual punishment by imposing a 37-years-to-life sentence. The Attorney General conceded that defendant's case should be remanded for the trial court to conduct a mental health diversion eligibility hearing based on the recent enactment of section 1001.36,[5] and for the trial court to determine whether to exercise its discretion under section 1385 to strike defendant's section 667,

---

[5] Effective June 27, 2018, section 1001.36 authorized trial courts to grant pretrial diversion to defendants who are diagnosed with a qualifying mental disorder and who meet other requirements. (Stats. 2018, ch. 34, § 24.)

6

subdivision (a) serious felony priors, and thus the Attorney General contended resolution of the remaining issues was unnecessary. This court agreed, and conditionally reversed the judgment with the following instructions: "If the trial court finds that defendant suffers from a qualifying mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the relevant statutory criteria in Penal Code section 1001.36, the court may grant defendant diversion. If defendant successfully completes diversion, the court shall dismiss the charges and allegations against defendant. However, if the court declines to grant defendant diversion under Penal Code section 1001.36, or if defendant does not successfully complete diversion, the court shall reinstate defendant's convictions and resentence defendant. At the resentencing hearing, the trial court shall determine whether to exercise its discretion pursuant to Penal Code section 1385 to strike defendant's prior serious felony convictions for the purposes of sentencing him under Penal Code section 667, subdivision (a). Defendant may renew his *Romero* motion at the resentencing hearing." (*People v. Garris*, *supra*, H045657.)

### E. *Proceedings Upon Remand*

Defendant then applied to the trial court for mental health diversion, asserting that the section 1001.36 criteria weighed in favor of granting diversion. Defendant's application correctly noted that he had admitted the allegations concerning his prior offenses, including that he had sustained two prior serious felony convictions under section 667, subdivision (a). Defendant's application stated that the trial court sentenced him to 27 years to life in prison, without noting the 10-year consecutive sentence imposed for the prior serious felony convictions. The prosecution's opposition to the application for mental health diversion correctly noted that defendant had admitted to having sustained two prior serious felony convictions under section 667, subdivision (a) and that the trial court imposed a 10-year consecutive sentence for these enhancements. The prosecution's opposition also noted that this court remanded this matter not only for a determination as to whether defendant should be granted diversion, but also for a

7

determination whether the trial court should exercise its discretion under section 1385 to strike the punishment for defendant's prior serious felony convictions. The prosecution argued that defendant was not eligible for mental health diversion in part because it asserted granting diversion would pose an unreasonable risk of danger to public safety.

The trial court denied the application for mental health diversion. The trial court stated it was satisfied that defendant suffered from a qualifying mental disorder and that the disorder played a significant role in the commission of the charged offenses, as required by section 1001.36, subdivision (b). The trial court then ruled that defendant was not suitable for diversion because defendant's actions demonstrated he would not comply with and respond to mental health treatment. The trial court further found defendant was not suitable for mental health diversion under section 1001.36, subdivision (c)(4), which states that a defendant is suitable for pretrial diversion if the following is met: "The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."[6] The trial court ruled: "I believe this is exceptionally dangerous conduct. And he's at risk of [committing] a super strike driving 100 miles an hour in a car after car-jacking and smashing into a berm [*sic*] is exceptionally dangerous conduct. And his in-custody conduct also includes multiple incidences of violence, even in that structured environment. [¶] All of that being said, even if all the elements were satisfied and the court -- I believe I still would not exercise my discretion -- were to grant mental health

---

[6] At the time the trial court denied the application for mental health diversion, the provision regarding a defendant's risk of danger to public safety that is now contained in section 1001.36, subdivision (c)(4) was numbered as section 1001.36, subdivision (b)(1)(F) and contained minor changes from the current wording of the statute not relevant here.

8

diversion, I just think, as I stated at sentencing, and continue to believe that the defendant is a risk to public safety. And the proof's in the pudding: even in custody and since the sentencing on this case, he's had double-digit violations in custody, including unprovoked violence. [¶] So I believe he would be a significant risk to our community if released and is not amenable to mental health treatment, mostly based on his conduct of failing to comply with mental health treatment in custody and out of custody."

Defendant then moved the trial court under section 1385 to dismiss a prior strike conviction pursuant to *Romero*. This motion again correctly noted that defendant had admitted the prior conviction and prior prison term allegations, including that he had sustained two serious felony convictions under section 667, subdivision (a). This motion, like the earlier application for mental health diversion, listed defendant's sentence as 27 years to life without noting defendant was sentenced to a consecutive 10-year sentence for the section 667, subdivision (a) enhancements. The motion focused on the defense's request to dismiss a prior strike conviction without specifically asking the trial court to strike the punishment associated with one or more of the prior serious felony convictions. However, the prosecution's opposition to defendant's motion stated: "The People respectfully oppose both acts of leniency this Court is now asked to consider with respect to Defendant's prior convictions; it is not within the interests of justice to strike Defendant's serious felony priors pursuant [to] its direction under Senate Bill 1393 or to strike the enhanced sentence[] called for by the Three Strikes Law. Defendant's life-long pattern of violent behavior, his violent conduct while in custody, his demonstrated refusal or inability to comply with treatment, and his low prospects for rehabilitation overwhelmingly support the imposition of Penal Code [fn. omitted] section 667, subd. (a) and the Three Strikes Law." The prosecution's opposition specifically argued that it was inappropriate to strike the punishment for defendant's serious felony priors, and it argued that the criteria of section 1385 applied to both decisions before the trial court: the serious felony priors and defendant's prior strikes. The prosecution cited the nature of

9

defendant's current offenses, the nature of defendant's two prior strike offenses, and defendant's "background, character, and prosects," each time arguing that these factors weighed against both the *Romero* motion and striking the punishment associated with defendant's prior serious felony convictions.

At a hearing on defendant's motion, the trial court stated it had read and then re-read the submissions from the parties. Defendant's counsel briefly presented argument, noting that the trial court previously found defendant suffers from a mental disorder and the disorder played a significant role in the commission of the charged offenses, and generally arguing that it would be "not fair" under section 1385 to reimpose the same sentence originally imposed, given defendant's mental health issues. Defense counsel asserted: "I would just say to the Court that what [defendant] is looking for is fairness and what's fair." The prosecution broadly asserted that under section 1385, "it is not within the interests of justice to strike any penalties that the [L]egislature still imposes upon defendants in [defendant's] position," and that "[w]e are still deeply concerned about public safety and the risk that [defendant] poses to society if released."

The trial court then ruled that defendant "falls squarely within the spirit of the [T]hree [S]trikes law," citing defendant's criminal history and the nature of defendant's most recent offenses. The trial court found that defendant's most recent criminal activity "was extremely violent and out of control, and it was really very lucky that there were not very significant injuries involved in that." The trial court noted defendant's "spotty-at-best record in trying to address [his] very serious mental health issues," the fact that defendant's most recent criminal activity "occurred very shortly after release from custody," and defendant's "extreme difficulty in controlling his behavior in a non-illegal or non-violent way." The trial court stated: "And, really, again, the decision for the Court is, is this a repeat offender that falls within the spirit of three strikes and that, if released, he would be a continuing risk to our community? I think the answer to that is, unfortunately, yes." The trial court thus ruled: "I'm going to deny the request -- or better

10

put, I'm not going to exercise my discretion to strike the prior convictions in this matter, and the sentence previously imposed is to remain in effect." The prosecutor then asked: "Your Honor, just to make sure that we address all issues within the remittitur, that decision is also applying to the Penal Code Section 667(a) priors?" The trial court replied, "Yes."

This appeal followed.

## III. DISCUSSION

### A. *Ineffective Assistance of Counsel – Failure to Request to Strike Punishment for Prior Serious Felony Convictions*

Defendant asserts that he received ineffective assistance of counsel because his defense counsel failed to ask the trial court to strike the 10-year consecutive sentence for his prior serious felony convictions. We do not agree.

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Gamache* (2010) 48 Cal.4th 347, 391.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) Regarding prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).) "A defendant must prove prejudice

11

that is a ' "demonstrable reality," not simply speculation.' [Citations.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.) "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland*, *supra*, at p. 697.)

After defendant was initially sentenced, the Governor signed Senate Bill No. 1393, which amended section 1385, subdivision (b). (Stats. 2018, ch. 1013, § 2.) The changes effected by Senate Bill No. 1393 apply retroactively to nonfinal judgments. (*People v. Stamps* (2020) 9 Cal.5th 685, 699.) Under section 667, subdivision (a) a court is required to impose a five-year consecutive term for "[a] person convicted of a serious felony who previously has been convicted of a serious felony . . . ." Under the previous version of section 1385, the court had no discretion to "strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." (Former § 1385, subd. (b).) Senate Bill No. 1393 removed the prohibition against striking a prior serious felony conviction for sentencing purposes under section 667. Section 1385, subdivision (c)(1) was then amended to provide: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(2) sets forth several factors the trial court shall consider in exercising this discretion, and it states: "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Here, we need not decide whether the performance of defendant's counsel was deficient in failing to specifically ask the trial court to strike the punishment for defendant's prior serious felony convictions under the amendments that took effect after

his trial. Even assuming defendant's counsel performed deficiently, no prejudice resulted because the trial court considered this issue and decided sentencing relief was not warranted.

This court's prior opinion specifically directed the trial court to consider whether to exercise its discretion under section 1385 to strike defendant's serious prior felony convictions for sentencing purposes. We presume the trial court read and followed this direction. (See § 1265, subd. (a) ["After the certificate of the judgment has been remitted to the court below, . . . all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted."].) Additionally, the prosecution's opposition to defendant's *Romero* motion put the trial court on notice that it was being asked to determine whether to strike defendant's prior serious felony convictions for sentencing purposes under section 667, subdivision (a). The trial court stated that it read the filings by both parties. At resentencing, defense counsel did not specifically request relief concerning the prior serious felony convictions, but he did broadly ask the court to act in fairness to not re-impose the same sentence. Then, once the trial court determined that it was not going to provide *Romero* relief to defendant, the prosecution specifically asked the trial court whether its ruling also applied to defendant's prior serious felony convictions under section 667, subdivision (a), and the trial court replied, "Yes." Thus, the record establishes that the trial court considered whether it would provide defendant sentencing relief under sections 667, subdivision (a) and 1385, subdivision (b), and it decided not to do so. Any deficiency by defense counsel in failing to specifically request this form of relief was therefore not prejudicial.

Defendant identifies several factors under section 1385, subdivision (c)(2) that his counsel could have argued applied, and he asserts that if his counsel had identified these factors, the trial court would have been required to give great weight to these factors in favor of dismissing the serious felony conviction enhancements. However, defendant made similar arguments under section 1385, subdivision (c)(2) in his *Romero* motion, and

13

the trial court declined to grant defendant relief. In addition, as defendant acknowledges, section 1385, subdivision (c)(2) provides that proof of one or more of the listed circumstances does not weigh greatly in favor of dismissing the enhancements where the trial court finds that dismissal of the enhancements would endanger public safety, and the trial court here found that defendant presented a risk to public safety both in denying the request for mental health diversion and in denying defendant's *Romero* motion. In denying defendant's *Romero* motion, the trial court answered yes to the question of whether, "if released, [defendant] would be a continuing risk to our community." This finding on the *Romero* motion was made under the same section 1385, subdivision (c)(2) "endanger public safety" standard as applies to the issue of whether the trial court should strike the punishment for defendant's serious felony priors. Similarly, the trial court previously found in denying defendant's application for mental health diversion that "defendant is a risk to public safety." Thus, it is not reasonably probable the trial court would have found it was in the interest of justice to strike the punishment for defendant's prior serious felony convictions when the trial court found defendant endangered public safety.

Defendant argues that the trial court's finding regarding the risk defendant posed to public safety does not mean that it would have made the same conclusion in the context of striking the punishment associated with at least one of the two prior serious felony enhancements. Defendant argues that the trial court's conclusions regarding the risk to public safety defendant posed were made in the context of immediate release. Defendant asserts that he was 38 years old at the time of his resentencing, and even if the trial court had struck one of his five-year enhancements for a serious prior felony conviction, he still would have had to serve an indeterminate sentence of 32 years to life. Thus, he argues: "Under these circumstances, it is unlikely that the trial court would have found 'a likelihood that the dismissal of the enhancement would result in physical

14

injury or other serious danger to others' after [defendant] would have completed that lengthy sentence. (§ 1385, subd. (c)(2).)"

Granting the *Romero* motion would not necessarily have resulted in defendant's immediate release into the community. Regardless, the trial court considered whether to strike defendant's prior serious felony priors under section 1385, and it declined to do so. The trial court found that releasing defendant into the community would endanger public safety, and it specifically made this ruling under the section 1385, subdivision (c)(2) standard. Between the denial of mental health diversion and the denial of the *Romero* motion, the trial court cited factors such as the nature of the most recent offenses, the nature of defendant's prior offenses, defendant's lack of progress addressing his mental health issues, and defendant's continued offenses while in confinement to determine that sentencing relief was not warranted. These factors were not necessarily limited to the risk of defendant's immediate release. A "reasonable probability" does not exist that the result of the resentencing hearing would have been different if counsel had specifically asked the trial court to strike the prior serious felony enhancements. (*Strickland*, *supra*, 466 U.S. at p. 694.) Thus, defendant was not prejudiced by any deficient performance by his counsel.

### B. Ineffective Assistance of Counsel – Failure to Request Staying of Sentence for Count 1 Under Section 654

At defendant's initial sentencing hearing, the trial court imposed a 27-years-to-life sentence for count 1, and the court imposed and stayed under section 654 sentences of 25 years to life on each of the other two counts. At the time of defendant's initial sentencing hearing, section 654, subdivision (a) provided in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a).) Effective January 1, 2022, section 654,

15

subdivision (a) was amended to read in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.) "Previously, under section 654, 'the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term. [Citation.] . . . [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' [Citation.]" (*People v. Jones* (2022) 79 Cal.App.5th 37, 45.)

Defendant asserts that he received ineffective assistance of counsel because at resentencing, his counsel did not ask the trial court to stay the sentence of 27 years to life imposed for the carjacking offense in favor of one of the 25-years-to-life sentences on the remaining counts. He argues that there could be no satisfactory explanation for counsel's failure to request this relief, as there was no disadvantage to making this request, and that it is reasonably probable the trial court would have granted this relief if asked, because the trial court had struck the punishment for his two one-year prior prison term enhancements at the original sentencing hearing. We do not agree.

The record contains no indication why defense counsel elected not to raise this issue. Thus, because defendant raises this issue on direct appeal, defendant's claim must be rejected unless: "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Mai, supra*, 57 Cal.4th at p. 1009.) Here, these criteria are not satisfied. Specifically, there could be a satisfactory explanation for counsel not raising the section 654 issue. Counsel may simply have elected to pursue sentencing relief through arguments he believed were more promising, such as dismissing the prior strike allegations or striking the punishment for

16

defendant's prior serious felony offenses. The trial court had discretion to grant sentencing relief for one of these other issues under section 1385. Defense counsel may simply have decided that pursuing relief under section 1385 represented the best prospect for obtaining sentencing relief, because if the trial court was not going to exercise its discretion to grant section 1385 relief "in the furtherance of justice," then it would not grant discretionary relief under section 654. (§ 1385, subd. (c)(1).)

Moreover, defendant has not demonstrated prejudice even assuming his counsel's performance was deficient. The relevant amendment to section 654 took effect on January 1, 2022. (Stats. 2021, ch. 441, § 1.) Defendant's resentencing hearing took place nearly nine months later on September 21, 2022. Nothing in the record indicates the trial court was not aware of its discretion under section 654; thus, we presume the trial court was aware of the amendment to this section and acted accordingly. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 ["Absent evidence to the contrary, we presume that the trial court knew and applied the governing law."].) The trial court's comments both in denying the request for mental health diversion and in denying defendant's request for section 1385 sentencing relief indicate the trial court was not inclined to grant any sentencing relief to defendant, given the factors the trial court articulated. A "reasonable probability" does not exist that the result of the resentencing hearing would have been different if counsel had asked the trial court to stay the sentence of 27 years to life on the carjacking count in favor of the 25-years-to-life sentence on another count, and thus defendant was not prejudiced by his counsel's failure to specifically raise this issue at resentencing. (*Strickland*, *supra*, 466 U.S. at p. 694.)

## C. *Denial of Romero Motion*

"The purpose of the Three Strikes law is 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' [Citation.]" (*In re Young* (2004) 32 Cal.4th 900, 909.) However, under the Three Strikes law, a trial court "may exercise the power to

17

dismiss granted in section 1385" to dismiss a prior strike allegation. (*Romero*, *supra*, 13 Cal.4th at p. 504.) "In ruling on a *Romero* motion, the court must consider whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies.' [Citation.] Thus, the Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion. [Citation.]" (*People v. Salazar* (2023) 15 Cal.5th 416, 428.) "[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' " [t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.)

Defendant contends that the trial court's denial of his *Romero* motion was irrational or arbitrary because the trial court "did not consider the age he would be at the time of release after serving a determinate sentence; it was contemplating immediate release . . . ." However, as we note above, the trial court was not necessarily being asked to outright release defendant immediately, particularly with regard to the *Romero* motion. Defendant argues that his age and the lengthy nature of his sentence indicates he would

18

not endanger public safety if his *Romero* motion were granted.  However, the trial court analyzed factors such as the nature of the most recent offenses, the nature of defendant's prior offenses, defendant's lack of progress addressing his mental health issues, and defendant's continued offenses while in confinement to determine that sentencing relief was not warranted, and these considerations are not necessarily limited to whether defendant should be immediately released.  The trial court stated that defendant's conduct in the charged offenses "was extremely violent and out of control, and it was really very lucky that there were not very significant injuries involved in that."  The trial court also took note of defendant's "spotty-at-best record in trying to address [his] very serious mental health issues," the fact that defendant's most recent criminal activity "occurred very shortly after release from custody," and defendant's "extreme difficulty in controlling his behavior in a non-illegal or non-violent way."  The trial court correctly noted that the underlying question before it is "whether [defendant] falls within the spirit of" the Three Strikes law, and the trial court cited relevant evidence in determining defendant "falls squarely within the spirit of" the Three Strikes law and that "if released, he would be a continuing risk to our community[.]"  Specifically, the trial court noted defendant's "very extensive and violent and continuous criminal history," defendant's "spotty-at-best record in trying to address [his] very serious mental health issues," and the fact that the most recent offenses "occurred very shortly after release from custody," indicating defendant's "extreme difficulty in controlling his behavior in a non-illegal or non-violent way."  The trial court's ruling was not "so irrational or arbitrary that no reasonable person could agree with it," and thus the trial court did not abuse its discretion in denying defendant's *Romero* motion.  (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

## IV.  DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

WILSON, J.

_____

ADAMS, J.*

***People v. Garris***
**H050410**
_____

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.